STATE OF MARYLAND *vs.* GEORGE P. MOTT.

*Municipal Corporations—Nuisance—Lime kilns.*

Whatever power can be properly exercised by the municipal authorities of the City of Baltimore over the rights and property of the citizen, under the denomination of police regulations, must be derived from the Legislature of the State, by express grant or by fair and reasonable intendment.

Within the power granted, the degree of necessity or propriety of its exercise rests exclusively with the proper corporate authorities; but in all cases the power exercised, or attempted to be exercised, must depend upon the nature and extent of the power granted; and whenever the question of the existence or limit of power is raised, it becomes the plain duty of the Courts to see that the corporate authorities do not transcend the authority delegated to them.

Under its charter, (Code of Public Local Laws, Art. 4, sec. 797,) the Mayor and City Council of Baltimore have power " to pass ordinances to preserve the health of the city, *to prevent and remove nuisances*, and to prevent the introduction of contagious diseases within the city and within three miles of the same, and may *regulate the* places for manufacturing soap and candles, and the erecting of slaughter houses and distilleries, and where every other offensive trade is carried on." Under the power thus granted, ordinance No. 113, of 1882, was passed, to be added as sec. 43½, to Art. 23, of the City Code. That ordinance provides, " that from and after May 1st, 1883, it shall not be lawful for any person or persons, or body corporate, to work, operate, or continue in use, for the purpose of burning oyster shells or stone lime, any kiln situated or erected within the limits of the City of Baltimore under a penalty," &c. An indictment was found under the Act of 1880, ch. 211, against M. for the alleged violation of this ordinance. The indictment, after reciting the ordinance *verbatim*, charged, that from the 1st to the 18th of May, 1883, the defendant " did unlawfully work, operate, and continue in use a certain kiln, *situate within the limits* of the City of Baltimore, for the purpose of burning oyster shells and stone lime, contrary to the ordinance in such case made and provided." On demurrer to the indictment, it was HELD :

State *vs.* Mott.

1st. That the burning of lime is not an unlawful business or trade, and is not a nuisance in its nature *per se*, irrespective of the location.

2nd. That neither in the ordinance, nor in the indictment founded thereon, was there anything apparent that justified the conclusion that all the lime kilns within the limits of the city, and which had been prohibited operation, were in fact nuisances.

3rd. That not being nuisances in their nature, irrespective of their local surroundings, there had been no authority conferred upon the Mayor and City Council to make them nuisances, either to health, comfort, or property, by simply declaring them so.

4th. That a particular use of property declared a nuisance by an ordinance of a municipal corporation, did not make such use a nuisance, unless it be so in fact, according to the common law or statutory definition of a nuisance.

5th. That the provision of the charter only conferred the authority "to *prevent* and *remove* nuisances;" and the mere possibility that all the lime kilns within the limits of the city might, in the future, become nuisances, did not justify the city in prohibiting the business entirely in anticipation.

6th. That an indictment for maintaining such kiln as a nuisance, should charge the facts necessary to bring it within the definition of a nuisance, or at least within the power conferred by the statute to suppress it.

7th. That the power conferred by the statute, and attempted to be executed by the general prohibitory ordinance could not be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance, which in its nature, situation, or use, was not or might not be such.

8th. That the ordinance could not be sustained under that clause in the section of the charter, which authorizes the city to "*regulate the places* for manufacturing soap and candles," &c.; "and where every other offensive trade is carried on." The power so delegated being simply to regulate the places where they are carried on, and not to forbid their being carried on, or to destroy them altogether.

9th. That the ordinance was void, and consequently the indictment founded upon it could not be maintained.

Appeal as upon Writ of Error, from the Criminal Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROB-INSON, IRVING, RITCHIE, and BRYAN, J.

*Wm. M. Merrick,* for the appellant.

It is matter of judicial knowledge that as far back as the time of Lord Coke, lime kilns were proceeded against as nuisances, and the very first case in which the jurisdiction for relief against noxious vapors was exerted, was in respect of a lime kiln, in the case of *Ric. de D. vs. Rich-ards & Swain,* 4 *Assize Book, fol.* 3, *p.* 6, quoted in *Wood on Nuisances, sec.* 470, and recognized in *Aldred's Case,* 9 *Coke,* 59. In the various *Works on Nuisances,* lime kilns find a place in the enumeration of those offensive things which Courts consider as *prima facie* nuisances. *Wood on Nuisances, sec.* 570 ; *Slight vs. Gutzlaff,* 35 *Wis.,* 676.

Now, if lime kilns have acquired that judicial notoriety which warrants the writers on text law to place them in the class of things which are *prima facie* nuisances, it seems difficult to understand how a Court, upon demurrer to an indictment under the ordinance prohibiting their use in Baltimore, can undertake to say, that upon the face of the ordinance, it is apparent that the city has exceeded its authority by prohibiting their use, on the ground of their being either detrimental to health or nuisances. The appellant does not contend that, if upon an enquiry as to the fact, before a jury, it had been established that lime kilns were neither offensive to the senses, nor deleterious to health, it would not have been competent and proper for the Court, upon such ascertainment, to declare the ordinance void. Neither is it maintained that a lime kiln is, *per se,* a nuisance, so as to preclude all evidence upon the subject. But a demurrer is not the proper mode of raising the question of fact, and in the .

total absence of proof, every presumption of law and fact is to be made in favor of the rightful exercise of municipal power. *Cooley on Const. Lim.*, 722, (*marginal*, 585,) *and note* 2; *Watertown vs. Mayo*, 109 *Mass.*, 319; *Slaughter-House Cases*, 16 *Wallace*, 36; *Coe vs. Schultz*, 47 *Barbour*, 69 *and* 70; *Metropolitan Board of Health vs. Heister*, 37 *N. Y.*, 661. .

This Court in *Mayor and City Council of Balto. vs. Clunet, et al.*, 23 *Md.*, 450, has said that every intendment and presumption ought to be made in support of the acts of corporations, where exclusive jurisdiction and power to legislate upon a given subject, has been conferred upon them by law, and that Courts of justice should never pronounce them void, unless their nullity and invalidity are placed beyond reasonable doubt. See also *Mayor and City Council vs. Hughes, Adm'r, &c.*, 1 *Gill & John.*, 492; *Mayor, &c., of Balto. vs. Radecke*, 49 *Md.*, 229.

The language employed by this Court in *Woodyear vs. Schaefer*, 57 *Md.*, *at page* 10, is a full demonstration of the propriety of exerting the power to prevent by ordinance, the generation and emission of the noxious vapors from lime kilns. It may be difficult to measure how far this or another kiln contributes to destroy the comfort, or impair the health of the people, but, that in *some degree*, each kiln does emit noxious and pestilent vapors, is notorious.

The degree of the injury and the degree of the necessity for exerting the preventive and restraining power of the municipality must be left to the exclusive judgment of the Mayor and City Council, to whom the discretion has been confided by law. *Harrison vs. Mayor, &c., of Balto.*, 1 *Gill*, 276, 7. It was in part to dispense individual citizens in the various localities, subject to the annoyance of nuisances, from the burden of vindicating their rights by private suits, that the Legislature made the city authorities a *quasi* tribunal, and clothed them with power

to regulate, to prevent or to remove nuisances, and this salutary power should not be frittered away by construction. If the ordinance be really levelled against a trade, which is neither offensive nor unwholesome in point of fact, and is for that reason unwarranted and void, then how easy under the plea of " not guilty " for a jury to enquire, and, after duly weighing evidence, determine that matter by a verdict; or still more satisfactorily might the facts be ascertained, upon testimony taken in a Chancery proceeding, to restrain the enforcement of the ordinance.

But surely under the broad grant of power to the city, and in the light of common experience of the noxious capacities of lime kilns, and the long course of cases, running through three hundred years, from which it has come to be held by the text books that lime kilns are, *prima facie,* nuisances ; it cannot be successfully urged before this Court, that the ordinance in question is, upon its face, arbitrary, unreasonable and void. Such a judgment would scarcely comport with the rule of cautious interference, prescribed in *Mayor, &c., of Balto. vs. Radecke,* 49 *Md.,* 229. It was admitted below, and will not be denied here, that if the ordinance be in other respects valid, it is not legally objectionable, because it interferes with an existing business, or stops the use of any existing structure. The law is too well settled, that offensive manufactures may be stopped; and that under changed circumstances, what was once lawful or tolerable, may become a nuisance, and as such, be forbidden in the future. *Coe vs. Schultz,* 47 *Barb.,* 64; *Metropolitan Board of Health vs. Heister,* 37 *N. Y.,* 667, 668; *Cooley on Constitutional Limitations, marginal,* 585, 595, 596, *and notes.*

*J. Alexander Preston,* and *Robert D. Morrison,* for the appellee.

As the defendant had undeniably done just that for which he has been presented and indicted, he was of

necessity driven to one of two courses; either he must plead guilty or he must demur. He did the latter, and thus raised the question of the validity of the ordinance, which is the question now before the Court.

It is clear, and it seems to be conceded in appellant's brief, that if the city had any power to pass this ordinance, the power is derived from section 797 of Article 4, Code of Public Local Laws: "The Mayor and City Council have power to pass ordinances to preserve the health of the city; to prevent and remove nuisances　*　*　*　* and may *regulate* the places for manufacturing soap and candles; the erection of slaughter-houses and distilleries, and where every other offensive trade is carried on."

The ordinance undertakes to do more than "regulate" the place or places for carrying on the business of burning lime. It altogether prohibits it in *any place* within the city limits. It seems to be well settled, that the power to *regulate* does not authorize entire prohibition.

Such is the doctrine expressly laid down in *City of St. Paul vs. Laidler*, 2 *Minn.*, 207, where the Court say: "Under the power to regulate and license, a city cannot restrain trade." "A by-law for the regulation of trade, imposing particular restraints as to time and place, is good, but general restraints are bad." *Village of Buffalo vs. Webster,* 10 *Wendell*, 100.

The same principle is laid down in *Dillon on Municipal Corporations, secs.* 319, 323, *&c.; Mayor, &c., of Baltimore vs. Radecke,* 49 *Md.,* 228.

Nor can the ordinance be sustained under the power "to prevent and remove nuisances." It cannot be held to be a valid exercise of this power, unless the Court can assume to know that *all* lime kilns situated *anywhere* within the •city limits are, *per se*, public nuisances. It is not true that everything that is disagreeable or offensive, or even noxious, is a nuisance *per se.*

Thus it has been held that a tannery is not such—*State vs. Cadwalader,* 7 *Vroom Rep.,* 283; nor a slaughter-

house, 10 *Bosworth*, 100 *N. Y.*—though both have been held to be nuisances, because carried on in improper places—so of gas works, *Ottowa Gas Light, &c., Co. vs. Thompson*, 39 *Ill.*, 598.

If then, lime kilns are not nuisances at common law, and are not made such by statute, can they be made nuisances by ordinance ? *Dillon on Mun. Corp.*, sec. 374, *note* 5 ; *Wood on Nuisances*, 12, 14, 30, 34, 671.

In the case of *Yates vs. Milwaukee*, 10 *Wallace*, 505, the Supreme Court say : "It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws of either the city or State within which a given structure can be shown to be a nuisance, can, by its mere declaration, that it is one, subject to removal, &c., this would place every house, every business, and all the property of the city at the uncontrolled will of the temporary local authorities."

The business which this ordinance would destroy is of a most extensive character. All the great oyster packing houses burn their own shells ; and it is not matter of common knowledge that lime kilns are the offensive things, destructive to comfort, health and life, as represented by the appellant. If such were true, it could hardly be the case that the records of the Criminal Court of Baltimore City should fail to show a single case of an indictment of a lime kiln as a nuisance.

ALVEY, C. J., delivered the opinion of the Court.

Whatever power can be properly exercised by the municipal authorities of the city of Baltimore over the rights and property of the citizen, under the denomination of police regulations, must be derived from the Legislature of the State. It must be by express grant, or by fair and reasonable intendment; for otherwise the trades and business of the people would be at the mercy, and be made dependent upon the caprice, of those who might ex-

ercise municipal power, instead of being governed and regulated by the general law of the land. Within the power granted, the degree of necessity or propriety of its exercise rests exclusively with the proper corporate authorities; but in all cases the power exercised, or attempted to be exercised, must depend upon the nature and extent of the power granted, and whenever the question of the existence or limit of power is raised, it becomes the plain duty of the Courts to see that the corporate authorities do not transcend the authority delegated to them.

The Legislature has delegated to the city of Baltimore very large and ample powers to preserve health, and to prevent and remove nuisances, and also to regulate the places for carrying on lawful but offensive trades; but this power, as ample as it is, does not authorize the exercise of an unlimited control over the trades and business occupations of the people. The terms of the grant of power by the State to the city are, that the Mayor and City Council shall "have power to pass ordinances to preserve the health of the city, *to prevent and remove nuisances*, and to prevent the introduction of contagious diseases within the city and within three miles of the same, and may *regulate the places* for manufacturing soap and candles, the erecting of slaughter-houses and distilleries, *and where every other offensive trade is carried on."* Code, Pub. Local Laws, Art. 4, sec. 797.

It was under the power thus granted that Ordinance No. 113 of 1882, was passed, to be added as section 43½ to Art. 23 of the City Code. That ordinance provides "that from and after May 1st, 1883, it shall not be lawful for any person or persons, or body corporate, to work, operate, or continue in use, for the purpose of burning oyster shells or stone lime, any kiln situated or erected within the limits of the city of Baltimore, under a penalty of twenty dollars for each and every day such kiln may be

so worked, operated or continued in use, for the purpose aforesaid."

It will thus be perceived that by this sweeping ordinance the entire industry of lime burning within the limits of Baltimore is at once forbidden and destroyed. Though the kilns may be on the remotest outskirts of the city, and beyond the reach of habitation, where they are not now, and may never become nuisances, and from whence they could in no manner affect the health of the city, they are all declared to be unlawful, and are forbidden to be continued. A stronger exertion of municipal power has seldom been attempted to be exercised over the property and the lawful pursuits of the citizen; and to support the ordinance by which such results are designed to be effected, the authority in the city must appear to be plain and unmistakable.

The indictment in this case was found under Act of 1880, ch. 211, for the alleged violation of the Ordinance No. 113, just recited; and it simply charges, after reciting the ordinance *verbatim*, that from the 1st to the 18th of May, 1883, the defendant "did unlawfully work, operate, and continue in use, a certain kiln, *situate within the limits* of the city of Baltimore, for the purpose of burning oyster shells and stone lime, contrary to the ordinance in such case made and provided." There is nothing alleged to constitute the lime kiln of the defendant a nuisance, nor is it alleged that it is a nuisance *per se*, either as to health, comfort, or danger to property. It is simply alleged, as will be observed, that the defendant operated his lime kiln within the limits of the city, contrary to the terms of the ordinance, which absolutely prohibits the operation of any lime kiln, without reference to its local surroundings, within the limits of the city, after a certain date.

The defendant demurred to the indictment, as it was his right to do, and thereby admitted the fact that he had operated his lime kiln as charged. Indeed, he was re-

State *vs.* Mott.

duced to the alternative of either denying the fact that he had operated his lime kiln after the time designated in the ordinance, or taking issue in law as to the validity of the ordinance. He made the latter issue, and that presented the question, whether or not it was competent to the Mayor and City Council, by ordinance, under the authority delegated to them, to prohibit absolutely, without condition or qualification, the burning of lime within the limits of the city of Baltimore.

Now, it is well known and understood, that the burning of lime is not an unlawful business or trade, and is not a nuisance in its nature *per se*, irrespective of the location. On the contrary, it is one of a multitude of most useful and necessary processes for the benefit of society and for its material improvement, but which may, from mere local conditions, become nuisances. Or, as said in *Aldred's Case*, 9 *Co.*, 59 *a*, "the building of a lime kiln is good and profitable; but if it be built so near a house that when it burns the smoke thereof enters into the house, so that none can dwell there, an action lies for it." But neither in the ordinance, nor in the indictment founded thereon, is there anything apparent that justifies the conclusion that all the lime kilns within the limits of the city, and which have been prohibited operation, are in fact nuisances. And not being nuisances in their nature, irrespective of their local surroundings, it is very clear that there has been no authority conferred upon the Mayor and City Council, to make them nuisances, either to health, comfort or property, by simply declaring them so. In the absence of such express authority, the principle is too well settled to require the citation of authorities for its support, that a particular use of property declared a nuisance by an ordinance of a municipal corporation, does not make such use a nuisance, unless it be so in fact, according to the common law or statutory definition of nuisance. The ordinance in question however, does not in terms declare lime kilns

within the limits of the city nuisances. It simply prohibits their operation altogether, but upon what particular ground does not distinctly appear. But the provision in the charter only confers authority " to *prevent* and *remove* nuisances;" and the mere possibility that all the lime kilns within the limits of the city may, in the future, become nuisances, does not justify the city in prohibiting the business entirely in anticipation. Upon any such principle of action by the city, many of the most valuable and indispensable trades might be stopped.

Whether a particular lime kiln is a nuisance or not, is a mixed question of law and of fact; and an indictment for maintaining such kiln as a nuisance, should charge the facts necessary to bring it within the definition of a nuisance, or, at least, within the power conferred by the statute, to suppress it. Here the power conferred by the statute and · attempted to be executed by the general prohibitory ordinance, cannot be taken to authorize the extra judicial condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not or may not be such. 1 *Dillon on Mun. Corp.*, (3d *Ed.*,) sec. 374, and the cases there cited; *Wood's Law of Nuisances*, sec. 740. To have adjudged the indictment good, would have required the Court to assume that all the lime kilns within the limits of the city were nuisances *per se*, without regard to their location, or that they were allowed by the statute, to be condemned unconditionally. This the Court would not have been justified in doing, as matter of law; nor would the Court have been justified in assuming that all such lime kilns would necessarily become nuisances, and were therefore subject to the power of prevention.

In the case of *Glenn vs. Mayor, &c. of Baltimore*, 5 *Gill & John.*, 429, this Court, in speaking of the power of the city authorities to abate nuisances, said : " Thus, whether the various manufactories spoken of in the 17th section of the ordinance, are calculated to endanger the habitations,

or the health of the inhabitants, may be a matter of science, upon which possibly a diversity of views might be entertained, and thus the legitimate exercise of the power might become a mixed question of law and of fact. The city authorities might pronounce that to be a nuisance which evidence might show was not a nuisance. They might prohibit a particular occupation upon the ground that it increased the danger of fire, when the reverse could be shown by the concurring testimony of all men. The power, therefore, or the want of power, to suppress a particular occupation as a nuisance, or as a means of preventing fire, should be shown in proof." And if required to be shown in proof, upon every principle, in a criminal proceeding, should the facts, to constitute the crime, be alleged in the indictment. The party proceeded against should have the liberty and the opportunity to controvert the facts. He is not to be concluded on the question of power, simply by the action of the city authorities in the adoption of the ordinance.

Nor can the ordinance in question be sustained under that clause of the section of the charter, before recited, which authorizes the city to "*regulate the places* for manufacturing soap and candles, etc., and where every other offensive trade is carried on."

That power assumes the existence of such trade, and that they may be carried on within the limits of the city. The power delegated is simply to regulate the places where they are carried on, and not to forbid their being carried on, or to destroy them altogether. It is assumed in the power granted that such trades will not be carried on under such condition of things as to constitute them nuisances, and thus bring them within the scope of the general power to prevent or remove nuisances; but that they will be carried on at proper places, subject to the regulating power of the city. And such being the case, it is well settled that a power simply to regulate does not

embrace a power to prohibit or destroy a trade or occupation. 1 *Dillon on Mun. Corp.*, (3d *Ed.*,) sec. 325; *Radecke's Case*, 49 *Md.*, 217. If therefore lime kilns be classed among the offensive trades, subject to have the places of their operation regulated by the city, they are not liable to be prohibited, unless they be nuisances in fact, according to legal definition. On the contrary, the very power of regulation is a full recognition of the legal right to maintain the kilns within the city, unless and until they become nuisances in fact.

Upon the whole, we are of opinion that the Ordinance No. 113, designated as section 43½ in Article 23 of the Baltimore City Code, is void, for the reasons we have stated; and consequently the demurrer to the indictment, founded upon such ordinance, was properly sustained by the Court below, and we must, therefore, affirm the judgment.

*Judgment affirmed.*