## MOSES *v.* THE UNITED STATES.

CRIMINAL PLEADING; PUBLIC NUISANCES; STATUTORY CONSTRUCTION; POLICE REGULATIONS; SMOKE NUISANCE; EVIDENCE.

1. In an information for a violation of the act of Congress of February 2, 1899 (30 Stat. 812), the second section of which provides that "the owner, agent, lessee or occupant of any building from the smokestack or chimney of which there shall issue or be emitted thick or dense black or gray smoke," etc., shall be held guilty of creating a public nuisance, it is proper to charge that the defendants, being occupants, etc., did "unlawfully cause, permit and allow the emission," etc., instead of following the precise language of the section and charging the defendants simply as occupants of a certain building, from a smokestack or chimney of which the objectionable smoke was emitted, as the meaning of the section can not be extended so as to include all occupants of such building but must be limited to such occupants as shall have had an agency in the control of the furnace producing the smoke.

2. That such section of the act is so broad in its terms that it might

be applied, by possible construction, to persons beyond the power of Congress to punish for the existence of the thing declared to be a nuisance *per se*, can not prevent its having effect as to those clearly within its provisions; *following* Chapman v. United States, 5 App. D. C. 121; Lansburgh v. District of Columbia, 11 Id. 512.

3. The act of Congress of February 2, 1899, declaring the emission of dense or thick black or gray smoke or cinders from any smokestack or chimney used in connection with any stationary engine, etc., within the District of Columbia, to be a public nuisance, and providing a punishment therefor, is, upon its face, a valid and constitutional exercise of the police power of Congress over this District.

4. The proviso of that act excluding from its application " chimneys of buildings used exclusively for private residences," does not render the act void because of inequality and unjust discrimination ; nor does its limitation of the emission of the prohibited smoke "from any smokestack or chimney used in connection with any stationary engine, steam boiler or furnace," render it void upon such ground, in the absence of facts demonstrating that there can be no substantial distinction between the classes of engines, steam boilers and furnaces named in the act and those excepted.

5. Evidence offered by the defendants in such a prosecution that they had attached to their furnace the best known smoke-consuming appliance, but that neither it nor any other then known would prevent the emission of such smoke for a brief period upon each occasion that fire might be started, or the furnace " coaled," or " raked down," provided that soft bituminous coal be the fuel consumed, is properly excluded.

6. Questions propounded the witnesses for the government in such a prosecution on cross examination calling for their opinion as to whether the smoke was dangerous to health, life or property of persons living in the neighborhood of defendant's house or to the public at large, and also if the same constituted a public nuisance, are properly excluded, as what constitutes a public nuisance under the statute, is primarily for the determination of Congress and lastly a question of law for the court, and also because the first question excludes the question of cleanliness and public comfort.

7. In such a prosecution only satisfactory proof by the defense that under no circumstances could the emission of the forbidden smoke occasion material injury, inconvenience or discomfort to the public, would, at most, be sufficient to show that the statute was an unwarranted invasion of private right.

No. 977. Submitted April 11, 1900. Decided May 8, 1900.

In ERROR to the Police Court of the District of Columbia. *Judgment affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Arthur A. Birney* and *Mr. Henry F. Woodard* for the plaintiffs in error.

*Mr. Thomas H. Anderson,* United States Attorney for the District of Columbia, and *Mr. Ashley M. Gould,* Assistant Attorney, for the United States.

Mr. Justice SHEPARD delivered the opinion of the Court:

This case comes before us on a writ of error to the police court of the District, to review a judgment of conviction under the provisions of the following act of Congress, approved February 2, 1899 (30 Stat. 812):

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That on and after six months from the passage of this act the emission of dense or thick black or gray smoke or cinders from any smokestack or chimney used in connection with any stationary engine, steam boiler, or furnace of any description within the District of Columbia shall be deemed, and is hereby declared, to be a public nuisance: *Provided,* That nothing in this act shall be construed as applied to chimneys of buildings used exclusively for private residences.

"Sec. 2. That the owner, agent, lessee, or occupant of any building of any description from the smokestack or chimney of which there shall issue or be emitted thick or dense black or gray smoke or cinders within the District of Columbia on or after the day above named shall be deemed and held guilty of creating a public nuisance and of violating the provisions of this act.

"Sec. 3. That any person or persons violating the provisions of this act shall, upon conviction thereof before the Police Court of the District of Columbia, be punished by a

fine of not less than ten dollars nor more than one hundred dollars for each and every offense; and each and every day wherein the provisions of this act shall be violated shall constitute a separate offense."

The information charges that the plaintiffs in error, William H. Moses, Harry C. Moses and Arthur C. Moses, on January 22, 1900, "being then and there the occupants of a certain building used as a furniture store and situated on the southwest corner of Eleventh and F streets N. W., in the city of Washington, in said District, to which said building there is attached a smokestack and chimney used in connection with a certain stationary engine, steam boiler and furnace in said building, the said William H. Moses, Harry C. Moses and Arthur C. Moses, did then and there unlawfully cause, permit and allow the emission into the open air, within said District, from the smokestack and chimney situated as aforesaid, certain thick and dense black and gray smoke, which was then and there a public nuisance, against the form of the statute in such case made and provided," etc.

The first assignment of error relates to the form of the information and is founded on the denial of a motion to quash.

The first section of the act which defines the offense, denominated a public nuisance, is plain and complete in its terms. The emission of thick or dense black or gray smoke is declared a nuisance *per se* and punishable as an offense.

Assuming that Congress had the power so to declare, all that is necessary in the information is, the allegation of the commission of the act, by the responsible party, in the language of the statute. *Evans* v. *United States*, 153 U. S. 584, 587; *Yeager* v. *United States* (present term), *ante*, p. 356.

In naming the persons responsible for the nuisance the information goes beyond the precise words of the second section, and properly so because they are not necessarily so

plain and exact in description as to require nothing more than their substantial repetition.

Instead of following the precise language of the section and charging the defendants as occupants of a certain building from the smokestack or chimney of which the objectionable smoke was emitted simply, as it is contended should have been done, the information charged that, being occupants, etc., they did "unlawfully cause, permit and allow the emission," etc. We think this was correct pleading.

Whilst the strict letter of the statute may be broad enough to include all occupants of a building from the chimney of which such smoke might be emitted, as has been suggested on the argument—for example, the occupants as tenants of separate rooms or suites in a large office, hotel or apartment building—it is clear that its meaning must be limited to such occupants as shall have had an agency in the control of the furnace producing the smoke.

Congress would not have the power to punish any mere occupant of a part of a building, who has nothing to do with maintaining the furnace and can not interfere with its operation; and it is not to be presumed that such was the intent. In the absence of a plain expression of a contrary intent, such persons are not to be regarded as occupants and subject as such to the penalty of the statute. To charge a person, therefore, with being an occupant merely of a building from the smokestack of which there had issued the prohibited smoke, would not sufficiently allege the offense.

That the language of the act "enables the court to infer the intent of the legislature does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." *United States* v. *Carll*, 105 U. S. 611, 613.

That the section of the act is so broad in its terms that it might be applied, by possible construction, to persons beyond the power of Congress to punish for the existence of

the thing declared to be a nuisance *per se*, can not prevent its having effect as to those clearly within its provisions. *Chapman* v. *United States*, 5 App. D. C. 122, 131: S. C., 166 U. S. 661, 667; *Lansburgh* v. *Dist. of Col.*, 11 App. D. C. 512, 526.

The next contention on behalf of the plaintiff in error is, that Congress had not the power to declare the emission of thick or dense black or gray smoke from chimneys a nuisance *per se* and punish the act as an offense, because the effect of the enactment is to deprive persons of their property without due process of law.

As we are not dealing, in this case, with regulations of municipal officers acting under delegated authority, but with an act of Congress itself, it is unnecessary to review certain cases chiefly relied on in support of the contention; namely, *St. Louis* v. *Hitzeberg*, 141 Mo. 375; *St. Paul* v. *Gilfillan*, 36 Minn. 298; and *State* v. *Mott*, 61 Md. 297.

Those cases all involved the construction of the powers delegated to such officers, and it is clear that they would have no power to declare a thing a nuisance *per se* without express legislative authority at least. *Yates* v. *Milwaukee*, 10 Wall. 497, 505.

They have no application to the exercise of the power by the legislature itself.

The power of Congress to enact regulations affecting the public peace, morals, safety, health and comfort, within the District of Columbia, is the same as that of the several State legislatures within their respective territorial limits. It is no less, nor can it be greater; for all of the guaranties of the Constitution respecting life, liberty and property are equally for the protection and benefit of all citizens residing in the District of Columbia, as of those residing in the several States. *Callan* v. *Wilson*, 127 U. S. 640; *United States, ex rel. Kerr*, v. *Ross*, 5 App. D. C. 241, 247, 248; *Lansburgh* v. *Dist. of Col.*, 11 App. D. C. 512, 521; *Stoutenburgh* v. *Frazier*, *ante*, p. 229.

16 Ct. App.—29

In a State, the citizen, in addition to the safeguards of its own constitution, is under the special protection of the Fourteenth Amendment; in the District of Columbia (in respect of the right here involved) he is under that of the Fifth.

That no person shall be deprived of life, liberty or property, is an ancient principle of limited government. As has been said by Chief Justice Waite: "It is found in Magna Charta, and, in substance, if not in form, in nearly or quite all the constitutions that have been from time to time adopted by the several States of the Union. By the Fifth Amendment it was introduced into the Constitution of the United States as a limitation upon the powers of the National Government, and by the Fourteenth as a guaranty against any encroachment upon an acknowledged right of citizenship by the legislatures of the States." *Munn* v. *Illinois*, 94 U. S. 113, 123.

At the same time, all property of the citizen is necessarily held under the implied liability that its use may be so regulated that it shall not be injurious to the equal right of enjoyment by others of their property or to the rights of the community. "Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and convenient." *Com.* v. *Alger*, 7 Cush. 53, 84; *Holden* v. *Hardy*, 169 U. S. 366, 392.

In the exercise of this power of regulation, called the police power, there can be no doubt that the legislature has a very wide discretion, and may add to, or subtract from, the category of public nuisances recognized at common law—moving in either direction, as exigencies may suggest, under limitations not yet definitely settled. As was said by Mr. Justice Brown, in *Lawton* v. *Steele*, 152 U. S. 140:

" While the legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interest, it may exercise a large liberty of choice in the means employed."

It would seem that no certain and satisfactory limitation upon the legislative discretion, in the exercise of the police power, can safely be declared in advance for application to very many cases that may subsequently arise.

As we had occasion to say in *Lansburgh* v. *Dist. of Col.,* 11 App. D. C. 527 : " The comprehensive scope of the police power, as exercised in our day and under our form of constitutional government, has been developed by the process of evolution. Rapid increase in population, wonderful inventions, from time to time, followed by vast material development and advances in the arts of civilization, have introduced novel situations and begotten difficulties for the solution of one generation, that were unanticipated and often undreamed of even by the most advanced minds of the generation next preceding. As a necessary consequence, the boundaries of the police power in its application to the property, business or personal liberty of the individual citizen have never been definitely settled so as to furnish a certain guide for all cases as they may present themselves for legislative or judicial determination."

The power of a State legislature, under the limitations of the Fourteenth Amendment,—which, as we have seen, is practically the same in this regard as that of Congress under the Fifth—has been recently considered by the Supreme Court of the United States in a case arising under an act of the legislature of New York, prohibiting the taking of fish with nets in certain waters and authorizing the summary seizure and destruction of all nets found in such waters, with express denial of any right of action for damages arising therefrom. After much consideration, and with some

division of opinion, the validity of the entire act was sustained. *Lawton* v. *Steele*, 152 U. S. 133, 136.

In the opinion of the majority of the court, delivered by Mr. Justice Brown, it was said:

"The extent and limits of what is known as the police power have been a fruitful source of discussion in the appellate courts of nearly every State of the Union. It is universally conceded to include everything essential to the public safety, health and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." After reciting many well known instances in which the power to declare and abate nuisances involving destruction of property, restraint of liberty, and the like, had been upheld, he said further:

"Beyond this, however, the State may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. *Barbier* v. *Connolly*, 113 U. S. 27; *Kidd* v. *Pearson*, 128 U. S. 1. To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers, is not final or conclusive, but is subject to the supervision of the courts."

Without reference to statutory regulation or declaration in a particular case, any use of one's property, ordinarily

lawful, may become a nuisance not only when it produces injury to public health, safety and morals, but also when it occasions public inconvenience, or materially impairs the public comfort—"the physical comfort of human existence." *B. & P. RR. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, 329; 16 Encyc. L. 924, *et seq.*; Wood on Nuisances, 476 *et seq.*; *Ross* v. *Butler*, 19 N. J. Eq. 294, 302, and cases reviewed therein.

A nuisance is public or private according to the extent or scope of its injurious effect. That which may constitute a private nuisance by reason of special injury to an adjacent or neighboring proprietor, may not amount to a general public nuisance. On the other hand, that may be a public nuisance, affecting injuriously the public or the public interests, whilst not operating a perceptibly special injury to one member of the community more than others.

Now, whilst the emission of the ordinary smoke from the chimneys of houses does not amount to a nuisance *per se*, it is nevertheless a matter of common knowledge, not to be ignored by the courts, that the emission of a volume of dense, black smoke from a single smokestack or chimney of a large furnace, may, under some circumstances, work physical discomfort to the general public coming within its circle of distribution upon public thoroughfares, and may possibly also work injury to public interests in other respects. Whenever it may become a special source of legal injury to an individual he will have an action of damages therefor, and, in cases of continuation, equity will afford complete relief by process of injunction. *B. & P. RR. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, 329; *Ross* v. *Butler*, 19 N. J. Eq. 294, 302; *Duncan* v. *Hayes*, 22 N. J. Eq. 25.

In a large and growing community, conditions like those suggested, and others, might well be apprehended to become widened in distribution, as well as increased in degree, through contributions to the volume of smoke made by other smokestacks or chimneys of like use. Charged with

the duty of guarding the public interests, and vested, as we have seen, with wide discretion and liberty of choice in the means adapted thereto, Congress, it must be presumed, inquired into and duly considered the effect, present and prospective, of the continued emission, constantly or at intervals, of dense black or gray smoke, upon those public interests in respect of safety, comfort and cleanliness.

And it must also be presumed that it apprehended and duly considered the probable injury to, or burden upon, private property, in such use, through the increased expense that may be involved in the use of smoke consuming appliances, or, in case of their inefficiency, in the substitution of smokeless coal, coke or other fuel for the soft, bituminous coal which produces the objectionable smoke.

The policy of adopting a regulation to meet the conditions is a matter peculiarly and exclusively within the province of the legislative department.

The judiciary can only interfere with the exercise of the power where it is manifest that the regulation has no real or substantial relation to objects within the police power, and constitutes a palpable invasion of private right. *Powell* v. *Pennsylvania,* 127 U.S. 678, 686; *Mugler* v. *Kansas,* 123 U.S. 623, 661; *Crowley* v. *Christensen,* 137 U.S. 86, 91.

In the light of the principles stated, the statute does not appear, upon its face, to have been beyond the power of Congress to enact; hence the motion to quash, upon that ground, was rightly overruled.

Nor can we concur in the contention that the proviso, excluding from the application of the act " chimneys of buildings used exclusively for private residences," renders the statute void because of inequality and unjust discrimination.  And the same may be said as regards the limitation of the prohibited smoke to its emission " from any smokestack or chimney used in connection with any stationary engine, steam boiler or furnace."

The Fourteenth Amendment, which prohibits the denia

by a State of the equal protection of the law, does not, in its terms, apply to the legislation of Congress; but, assuming that the same principle is, within the spirit of that and of the earlier amendments, intended to operate upon the legislation of Congress, we can not regard the discriminations contained in the limitation and proviso aforesaid as having the effect charged.

The only inhibition upon the States is, that the classification of persons and things shall not be arbitrary. If there be some reasonable basis for the classification made it is not obnoxious to the charge of denial of equality. *G. C. & S. F. Rwy. Co.* v. *Ellis*, 165 U. S. 150, 155; *Magoun* v. *Ill. Trust and Savings Bank*, 170 U. S. 283, 294.

In the absence of facts sufficient to demonstrate that there can be no substantial distinction between the classes of engines, steam boilers and furnaces named in the act, and those specially excepted, it is not apparent that the classification made is without reasonable basis. *People* v. *Lewis*, 86 Mich. 273.

We can readily apprehend that there may be a very great difference between the quantity and quality of the smoke emitted from the chimneys of private dwellings, and from those connected with engines, steam boilers and furnaces used in buildings devoted to manufacturing purposes, or in the large buildings occupied by many persons, that require an immense consumption of fuel. It may well be that the fuel ordinarily consumed in one class of buildings is quite different from that consumed in the other, and that as a matter of fact the smoke emitted from the chimneys of one class may be injurious to the public and the other not.

The distinction made between stationary engines and portable ones would, on its face, likewise seem not to have an unreasonable foundation.

Probably the only portable engines in use would be fire engines, steam rollers, and railway locomotives. Of the two former it is sufficient to say that they are necessary agencies

for the promotion and protection of paramount public interests, and are in use for such necessary periods of time and in such places only as exigencies may demand.

The railway engine performs a different function, is confined to a space set apart for its use, and besides is not constantly engaged in diffusing its smoke from a permanent location. It may be presumed that these various conditions were also considered by Congress in the exercise of its discretion in the premises.

Special regulations relating to the uses of railway engines in this and other respects have often been made, and have generally been considered not to violate the rule of equality, because confined to them alone.

In a case following close upon that of *Railway Co.* v. *Ellis,* before referred to, the Supreme Court of the United States held that an act of the legislature of New York, regulating the heating of railway passenger cars, was not arbitrary and unequal because railways less than fifty miles long were excepted from its operation. *N. Y., etc., R.R. Co.* v. *New York,* 165 U. S. 628, 633.

After the motion to quash had been overruled, the case was submitted to the jury upon proof tending to show the emission of thick and dense black and gray smoke from the chimney of the building occupied by the defendants as a furniture store, at certain times upon a certain day.

The defendants offered evidence tending to show that they had attached to their furnace, at the time, the best known smoke consuming appliance; but that neither it nor any other, then known, would prevent the emission of such smoke for a brief period upon each occasion that fire might be started, or the furnaces "coaled," or "raked down," provided that soft bituminous coal be the fuel consumed.

The evidence was excluded and exception taken. In this there was no error. That there may be no smoke consuming appliance that will, under all circumstances, prevent the nuisance, is not a matter of relevancy. The facts

concerning them were presumably within the knowledge of Congress also when it took action; and no provision has been made for their use. The use of smokeless fuel instead may have been expressly contemplated.

Defendants, in the cross-examination of the Government's witnesses, asked each of them if the smoke testified to by him was of such character as to be dangerous to health, life or property of persons living in the immediate vicinity of the defendant's house, or to the public at large ; and also if the same constituted a public nuisance.

The court refused to let the questions be answered, and exceptions were again taken.

Assuming that each witness would have answered in the negative, there was no error in their exclusion. The questions called for opinions, not facts. What constitutes a public nuisance, under this statute, was primarily for the determination of Congress and lastly a question of law for the court. Besides, the scope of the first question, even if admissible otherwise, was too narrow, in that it failed to include the question of cleanliness, and the public comfort that is involved in the emission of soot-distributing smoke.

The last offer of defendants was to prove by several witnesses engaged in business in close proximity to them that neither on the day in proof nor on any other day had the smoke from defendant's chimney been injurious to their property or dangerous to their health and safety. This evidence was also inadmissible.

That neighboring occupiers may not have sustained injury to property or health could not constitute a defense to prosecutions for the public nuisance. The absence of special injury to them as such would preclude an action of damages by any one of them, but could not determine the question of injury to public interests.

Nothing short of satisfactory proof that under no circumstances could the emission of the forbidden smoke occasion material injury, inconvenience or discomfort to the public,

would, at most, be sufficient to show that the statute, under the guise merely of the public interest, was an unwarranted invasion of private right. As we have before seen, a thing may be a public nuisance without, at the same time, being a special private nuisance to an adjacent owner or occupant.

If the smoke constitutes a public nuisance at all, it does not matter that it may not be constantly emitted, but only at intervals, from day to day. *Ross* v. *Butler*, 19 N. J. Eq. 294, 302.

We find no error in the judgment of the police court, and it must be affirmed. It is so ordered. *Affirmed.*