48 Md. App. 339 (1981)
427 A.2d 1025
CHARLES COUNTY SUPPORTING SERVICES EMPLOYEES LOCAL UNION 301
v.
BOARD OF EDUCATION OF CHARLES COUNTY, MARYLAND.
No. 542, September Term, 1980.
Court of Special Appeals of Maryland.
Decided April 8, 1981.
*340 The cause was argued before MOORE, MELVIN and MASON, JJ.
Charles A. Bongar, Jr., with whom were Andrews, Schick & Bongar, P.A. on the brief, for appellant.
Christopher C. Henderson, with whom was Edward S. Digges on the brief, for appellee.
MELVIN, J., delivered the opinion of the Court.
The central issue presented by this appeal is whether the court below erred in denying a petition for a writ of mandamus to compel the Charles County Board of Education to determine the composition of a bargaining unit for the noncertificated public school employees of Charles County. For the reasons to be stated in this opinion, we conclude that the initial decision by the public school employer to designate an exclusive representative for its noncertificated employees is discretionary and that if the public school employer chooses to not designate any exclusive representative for such employees, as was the case here, then it is under no duty to determine the composition of a bargaining unit. Accordingly, mandamus was properly denied, and we shall affirm the judgment below.

I
Although it is clear beyond peradventure that public employees have a First Amendment right to promote, associate with, and be represented by labor unions, Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 465, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979); see Cherry *341 v. Burnett, 444 F. Supp. 324, 330 (D. Md. 1977), it is nevertheless equally plain that the First Amendment does not afford public employees a right of collective bargaining as such; that is, the Constitution does not impose an affirmative obligation on public employers to either recognize, bargain with, or otherwise respond to employee organizations. Smith, supra; see Newport News Fire Fighters Association Local 794 v. City of Newport News, Virginia, 339 F. Supp. 13 (E.D. Va. 1972). Consequently, the duty sought to be imposed on the Charles County Board of Education to respond to the union demands in the present case, if it exists at all, must be found in State law.[1]
In 1968 the Maryland General Assembly enacted a detailed statute (Ch. 483 of the Acts of 1968) governing the organization of certificated public school employees. This Act, with but minor changes since its original enactment, is now codified as Maryland Code (1978), Title 6, Subtitle 4 of the Education Article.[2] Section 6-402 (a) of that subtitle merely recognizes rights already extant by virtue of the First Amendment:
"Employees may form and join organization.  Public school employees may form, join, and participate in the activities of employee organizations of their own choice for the purpose of being represented on all matters that relate to salaries, wages, hours, and other working conditions." (Emphasis in original).
However, Sections 6-404 (a) and 6-408 (b) (1) go beyond the First Amendment and  in tandem  establish for certificated employees a right of collective bargaining by *342 imposing on public school employers a correlative duty. Section 6-408 (b) (1) establishes the duty of negotiation:
"Representatives to negotiate.  On request a public school employer or at least two of its designated representatives shall meet and negotiate with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions." (Descriptive heading emphasized in original; other emphasis added.)
This provision, in itself, does not impose a general duty to bargain collectively with any employee organization, because, by its terms, the duty to negotiate only exists with respect to "designated" employee organizations. Designation is a process whereby an employee organization is determined, by criteria also fixed in Subtitle 4, to be the exclusive representative of a specified unit of employees. Thus, it is the duty to so designate an employee organization that makes § 6-408 (b) (1) operative and, thereby, generates a duty of collective bargaining. The duty to designate is set forth in § 6-404 (a):
"Public school employer to designate exclusive employee organization.  Each public school employer shall designate, as provided in this subtitle, which employee organization, if any, shall be the exclusive representative of all public school employees in a specified unit in the county." (Descriptive heading emphasized in original; other emphasis added.)
*343 That §§ 6-404 (a) and 6-408 (b) (1) create imperative duties and correlative rights is clear by their terms and has not been questioned.
In addition to affording certificated employees the substantive right of collective bargaining, Subtitle 4 also dictates the procedures by which that right is to be effected. There are specified procedures regarding both designation and negotiation. The procedural duties of the public school employer with respect to the task of designation are set forth primarily in §§ 6-404 (b) and 6-405. The first step in the designation process is the specification of bargaining units pursuant to § 6-404 (b):
"Composition of unit.  The public school employer shall determine the composition of the unit in negotiation with any employee organization that requests negotiation concerning the composition of the unit." (Emphasis in original.)
Specification of appropriate bargaining units then engages the minimum enrollment and voting requirements detailed in § 6-405 that, once satisfied by an employee organization with respect to a specified unit, compel designation of that organization as the exclusive bargaining representative for all employees in the unit. The public school employer's duties with regard to the conduct of negotiation with the exclusive representative so designated are delineated in § 6-408 of the statute.
A statutory scheme parallel to that enacted in 1968 for certificated employees was enacted in 1974 to govern the organization of noncertificated public school employees.[3] This Act, with but only minor changes since its original enactment, is now codified as Subtitle 5 of Maryland Code (1978) Education Article, Title 6. Although parallel to, and in many respects identical with, Subtitle 4, Subtitle 5 is not without its differences. The most notable distinction, at least with regard to the present case, is found in § 6-505 (a):
"Public school employer may designate exclusive *344 employee organization.  Each public school employer may designate, as provided in this subtitle, which employee organization, if any, shall be the exclusive representative of all public school employees in a specified unit in the county." (Descriptive heading emphasized in original; other emphasis added.)
As highlighted in the above quotation, § 6-505 (a) is distinguished from its analog in Subtitle 4, § 6-404 (a), in that it employs the word "may" as opposed to "shall," thereby indicating a power rather than a duty to designate an exclusive representative. We are aware that legislative use of the word "may" or "shall" does not, in itself, control judicial construction of the relevant statute as permissive or mandatory, Hitchins v. City of Cumberland, 215 Md. 315, 323, 138 A.2d 359 (1958); at the same time, we also acknowledge that "the word [may] bears its ordinary significance of permission unless the context [or] the purpose of the statute shows that it is meant to be imperative...." Fleishman v. Kremer, 179 Md. 536, 541, 20 A.2d 169 (1941). With regard to § 6-505 (a), both the context of that section and the purpose of Subtitle 5 as a whole bolster a permissive construction.
Viewed contextually, the designation clause of § 6-505 (a) must be considered in light of its Subtitle 4 counterpart, § 6-404 (a). That the legislature in juxtaposing what are now §§ 6-404 (a) and 6-505 (a) chose to use "may" in the latter but "shall" in the former, and further that the legislature in recodifying these provisions in 1978 as part of the Education Article did not deem it appropriate to eliminate this difference, we think strongly evidence the intent of the legislature to have the word "may" in § 6-505 (a) "bear its ordinary significance of permission."
Moreover, in the title of the original enactment of what is now Subtitle 5 the legislature declared that, inter alia, the Act was "For the purpose of permitting certain local boards[4] *345 of education to negotiate with certain organizations which represent noncertificated public school employees..." Ch. 719 of the Acts of 1974 (emphasis added). We find in this declaration a clear legislative purpose to authorize rather than compel the public school employers encompassed by its provisions to negotiate with their noncertificated employees. Manifestly, a permissive construction of the designation clause in § 6-505 (a) is consistent with this legislative intent and to construe it otherwise would clearly contravene that intent. Section 6-510 (b), by language identical to that of § 6-408 (b) (1), supra, requires public school employers to negotiate with "designated" employee organizations. Hence, if § 6-505 (a) were given a mandatory reading  compelling public school employers to designate exclusive representatives for noncertificated employees  then its operative effect would be to engage § 6-510 (b), thereby, imposing an imperative duty on public school employers to also negotiate with noncertificated employees in the same way that Subtitle 4 imposes such a duty with regard to employees that are certificated. Clearly, this would violate the express intent of the legislature. On the other hand, if § 6-505 (a) is construed as discretionary, in accordance with its language, then unless the public school employer decides that it will allow exclusive representation among its noncertificated employees and an exclusive representative is in fact designated pursuant to procedural provisions of Subtitle 5, the § 6-510 (b) duty to negotiate is not triggered, and the employer retains the discretion intended by the legislature.
In sum, only a permissive reading of the § 6-505 (a) designation clause, in contrast to the mandatory construction associated with its Subtitle 4 counterpart, is consistent with the language and context of § 6-505 (a) and with the express legislative purpose of the overall statutory scheme of which it is a part. For these reasons, we conclude that public school employers affected by Subtitle 5 have the statutory discretion[5] to decide whether they will designate any employee *346 organization as an exclusive representative of their noncertificated employees.
It should be observed that there is no merit to an allegation that a permissive reading of § 6-505 (a) denies noncertificated employees the right of collective bargaining. As discussed at the outset, the right of collective bargaining arises only by statute. Furthermore, as alluded to, the design of Subtitles 4 and 5 is such that the "designation" provision of each is the linchpin that determines the right of public school employees to engage in collective bargaining. It will be recalled that Subtitle 4 creates such a right with regard to certificated employees only because § 6-404 (a) imposes a duty to designate exclusive representatives, thereby, triggering the § 6-408 (b) (1) duty to negotiate. No such triggering occurs in Subtitle 5. Subtitle 5, by language identical to that used in Subtitle 4, recognizes the First Amendment rights of noncertificated employees:
"Employees may form and join organization.  Public school employees may form, join, and participate in the activities of employee organizations of their own choice for the purpose of being represented on all matters that relate to salaries, wages, hours, and other working conditions." § 6-503 (a) (emphasis in original.)
Also, § 6-510 (b), by language identical to that of § 6-408 (b) (1), establishes a duty to negotiate with "designated" employee organizations. However, because we construe § 6-505 (a) to be permissive such that it does not impose an imperative duty of designation, Subtitle 5 does not go so far as to create the substantive right of collective bargaining for noncertificated employees. Thus, it cannot be said that § 6-505 (a), as construed, deprives noncertificated employees of the right of collective bargaining when  apart from that section  no such right is granted noncertificated employees in the first place.
*347 Although Subtitles 4 and 5 are thus distinct with regard to the substantive right of collective bargaining, the procedural provisions of the two subtitles are virtually identical. It is within the procedural realm of Subtitle 5 that appellant bases its claim for mandamus.

II
The facts are not in dispute. In December of 1978, some members of the Charles County Supporting Services Employees Local Union 301 ("the Union")[6] went before the Charles County Board of Education ("the Board") requesting the Board to determine the composition of a bargaining unit for the noncertificated public school employees of Charles County and to designate the Union as the exclusive bargaining representative for the unit so designated. At that time, the matter was taken under consideration by the Board. Having received no response to its December requests, counsel for the Union renewed those requests by letter dated April 12, 1979. The Board finally responded by letter dated May 10, 1979, in which it denied the Union's requests and informed the Union that § 6-505 of the Education Article did not require it to recognize any organization as the exclusive representative for noncertificated employees. Not satisfied, the Union, by counsel, sent a second letter to the Board, this one dated July 10, 1979, simply requesting negotiation with the Board to determine composition of the appropriate bargaining unit and stating that this much was required by § 6-505. With this request apparently unanswered, the Union petitioned the Circuit Court for Charles County for a writ of mandamus that would compel the Board to determine, in negotiation with the Union, the composition of the bargaining unit for noncertificated employees. This petition was filed July 27, 1979. On January 16, 1980, a hearing was held on the *348 matter before Judge Mattingly. On February 13, 1980 and February 20, 1980, memoranda of law were submitted by the Board and the Union respectively. A surrebuttal memorandum was filed by the Board on March 4, 1980. Subsequently, Judge Mattingly issued a Memorandum Opinion and Order, filed April 2, 1980, denying the Union's petition. The Union filed a timely appeal with this Court seeking a reversal of the lower court and a remand ordering the petition for mandamus to be granted.
It is a cardinal principle that a writ of mandamus can only issue where, inter alia, the defendant is under an imperative duty to perform that which is sought to be judicially compelled. See Criminal Injuries Compensation Board v. Gould, 273 Md. 486, 514, 331 A.2d 55 (1975). In the present case, Judge Mattingly denied the Union's petition because he concluded that the Board was under no duty to determine the composition of a bargaining unit for noncertificated employees. We agree with this conclusion.
The Union, both below and in its appeal to this Court, has relied heavily upon the language of Education Article § 6-505 (b):
"Composition of unit.  The public school employer shall determine the composition of the unit in negotiation with any employee organization that requests negotiation concerning the composition of the unit." (Descriptive heading emphasized in original; other emphasis added.)
Considering the use of the word "shall" in the above-quoted provision and the juxtaposition of this provision with § 6-505 (a) which employs the word "may," and further perceiving a legislative intent common to both Subtitles 4 and 5 to establish uniform procedures for designating which employee organizations, if any, shall be exclusive bargaining representatives for public employees, we would agree that § 6-505 (b) is of a mandatory nature. Nevertheless, contrary to the Union's assertion, this conclusion does not resolve the issue presented by this appeal because the mandate of § 6-505 (b) is not triggered so *349 as to impose a present imperative duty unless and until the public employer first decides that it will allow exclusive representation among its noncertificated employees.
To understand the character of § 6-505 (b), it must be viewed in its proper perspective. In effect, the duty identified by § 6-505 (b)[7] is the first procedural step in the designation process detailed by § 6-506. Section 6-506, by language substantially the same as that of its Subtitle 4 analog, § 6-405, sets forth the method to be used for determining which, if any, employee organization is to be designated as an exclusive representative of the unit specified pursuant to § 6-505 (b). Section 6-506 in pertinent part provides:
"(a) Designation as provided in this section.  The designation of an employee organization as an exclusive representative shall be made as provided in this section.
(b) Request for recognition.  If an employee organization certifies to the public school employer that it has a membership enrollment of at least 30 percent of the total number of public school employees in a specified unit in a county as of June 1 of the year in which certification is made, this certification is a request for recognition as exclusive representative of all public school employees in the specified unit in the county.
(c) Election if another organization requests recognition.  If another employee organization certifies that it has a membership enrollment of at least 10 percent of the total number of public school employees in the unit as of the same June 1, an election shall be held in which the public school employees in the unit shall be offered the opportunity to choose:
(1) One of the employee organizations as the exclusive representative of all public school employees in the unit; or

*350 (2) Not to have exclusive representation.
(d) Election if no other organization requests recognition.  If no other employee organization certifies that it has a membership enrollment of at least 10 percent of the total number of public school employees in the unit, on the request of the employee organization under subsection (b) of this section, an election shall be held and the ballot shall offer a choice between:
(1) Exclusive representation by the organization; and
(2) Not to have exclusive representation.
(e) Designation without an election.  The public school employer shall designate the employee organization described in subsection (b) of this section as the exclusive representative of all public school employees in the specified unit in a county if:
(1) No other employee organization certifies that it has a membership enrollment of at least 10 percent of the total number of public school employees in the unit;
(2) The employee organization does not request an election under subsection (d) of this section; and
(3) The employee organization certifies that it has a membership enrollment of the majority of the public school employees in the unit in the county." (Descriptive headings emphasized in original; other emphasis added.)
Thus, together §§ 6-505 (b) and 6-506 prescribe how designation of an exclusive representative for noncertificated employees is to be accomplished. They are mandatory in the sense that designation cannot occur in any other way; that is, public school employers  if they choose to designate an exclusive representative for noncertificated employees  are not free to vary the procedures that these sections prescribe. Nevertheless, to say that designation can occur in only one way is not to say that designation must occur. As *351 already indicated, § 6-505 (a) makes the substantive question of designation discretionary with regard to noncertificated employees. Unless that section is to be flatly contradicted or rendered mere surplusage, it is clear that §§ 6-505 (b) and 6-506 do not, in themselves, impose a substantive duty on public school employers to designate an exclusive representative.
In the absence of a duty or a decision to designate, there can be no duty to undertake the procedures of designation. Hence, there is no duty for a public school employer to engage in the otherwise mandatory designation procedures of §§ 6-505 (b) and 6-506 where that employer has declined to make a designation at all. Accordingly, inasmuch as the Board in the present case exercised its discretion by refusing to designate any employee organization as an exclusive bargaining representative for noncertificated employees of Charles County, it was under no duty to determine, in negotiation with the Union, the composition of the appropriate bargaining unit or units for such employees, and the petition for mandamus was properly denied.

III
Anticipating our resolution of the statutory construction issues raised by its appeal, the Union argues alternatively in its brief that § 6-505, as construed, denies noncertificated employees equal protection of the laws in violation of both the Fourteenth Amendment and the Maryland Declaration of Rights. According to the Union, if § 6-505 does not afford noncertificated employees the same right of collective bargaining enjoyed by their certificated counterparts, then that statutory provision discriminates against noncertificated employees in connection with a "fundamental right" and cannot be sustained absent a "compelling governmental interest." Clearly, the Union has confused the right to organize with the right to collectively bargain. It will be recalled that though the former is a fundamental right, the latter is not. Smith v. Arkansas State Highway Employees, Local 1315, Newport News Fire Fighters Association Local 794 v. *352 City of Newport News, Virginia, both supra. Hence, inasmuch as Subtitle 5 explicitly recognizes the right of noncertificated employees to "form, join, and participate" in unions, and § 6-505 only distinguishes between certificated and noncertificated employees with respect to the right of collective bargaining, the constitutional validity of the distinction so drawn is properly determined by reference to the "rational basis" test.[8] Whether § 6-505 is purely economic in character and is, therefore, subject to only the traditional rational basis test, or is more than economic and affects an "important personal interest," thereby demanding more stringent application of that same standard, see Attorney General of Maryland v. Waldron, S.T. 1980, No. 45 (C.A., filed 3/13/81), we need not here decide. In either case, we think it well settled that "one who assails a legislative classification (on equal protection grounds) must sustain the burden of proving that it does not rest on any reasonable basis...." Carter v. State, 38 Md. App. 400, 404, 381 A.2d 309, cert. denied, 282 Md. 730 (1978), (quoting from Prince George's County v. McBride, 268 Md. 522, 532, 302 A.2d 620 (1973)). That burden has not been met here, for the Union did not show that there is no ground of difference between certificated and noncertificated employees, nor did it show that, given a ground of difference, there is no substantial relationship between that ground and the object of the legislation.
The equal protection claim here considered was not raised, in the pleadings or otherwise, either prior to or during the hearing held on the Union's petition for writ of mandamus. It appears from the record that the question was first raised by memorandum submitted subsequent to the hearing. The record does not indicate that any evidence was offered to suggest why the distinction drawn by Subtitles 4 and 5 is not rationally or substantially related to the plain differences distinguishing certificated and noncertificated employees. Indeed, the Union's constitutional claim below, as well as *353 before this Court, is based solely on the naked allegation that "[t]here is no justification to treat these two groups differently...." Under these circumstances, it cannot be doubted that the Union has failed to sustain its burden; it "has not overcome the presumptions which favor the constitutionality of a duly enacted statute." Carter, supra.
Judgment affirmed; costs to be paid by appellant.
NOTES
[1] The National Labor Relations Act specifically excludes states and political subdivisions thereof from its application. 29 U.S.C. § 152 (2) (1976).
[2] "Public School Employee" in the context of Subtitle 4 always refers to certificated employees and is defined by § 6-401 (c) as "a certificated professional individual who is employed by a public school employer or an individual of equivalent status in Baltimore City, except for a county superintendent or an individual designated by the public school employer to act in a negotiating capacity as provided in § 6-408 (b) of this subtitle...."

"Public School Employee" in the context of Subtitle 5, dealing with noncertificated employees, always refers to a noncertificated employee and is defined by § 6-501 (f) as "a noncertificated individual who is employed for at least 9 months a year on a full-time basis by a public school employer...."
[3] Ch. 719 of the Acts of 1974.
[4] Subtitle 5 specifically exempts six counties and Baltimore City from its application. Charles County, of course, is not exempted.
[5] It should be understood that although public school employers have discretion to permit or deny exclusive representation of their noncertificated employees, the employers may not compel exclusive representation.
[6] Charles County Supporting Services Employees Local Union 301 is a group of noncertificated public school employees of Charles County comprised of custodians, maintenance workers, secretaries, cafeteria workers and teachers aids.
[7] Section 6-505 (b) is the analog to § 6-404 (b) discussed above.
[8] It is clear that noncertificated employees do not constitute a "suspect" class so as to invoke strict scrutiny. See generally Attorney General of Maryland v. Waldron, S.T. 1980, No. 45 (C.A., filed 3/13/81).