PERRY ET AL. v. COUNTY BOARD OF APPEALS FOR MONTGOMERY COUNTY ET AL.

[No. 25, October Term, 1956.]

*Decided December 6, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ.

Submitted on brief by *James C. Christopher* and *John C. Keating* for the appellants.

*Alfred H. Carter, Assistant County Attorney for Montgomery County,* with whom was *Charles M. Irelan, County Attorney,* on the brief, for Montgomery County and the County Board of Appeals.

*Howard J. Thomas,* with whom were *J. Douglas Bradshaw* and *Bradshaw, Shearin, Redding & Thomas* on the brief, for Mrs. Bushong.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County, affirming the grant of a special exception for the operation of a care home in property zoned residential by the Board of Appeals for Montgomery County. The Legislature, by Chap. 566 of the Acts of 1914, incorporated "Section 3 of the Village of Chevy Chase" as a special tax district. For convenience we shall refer to this legislatively recognized community entity as the "Village". The appellants appear as individuals and as the Citizens Committee

of the Village, where the property is situate. The action below is defended here by Marjorie Bushong, who was granted the special exception, and by Montgomery County, which intervened by leave of the Circuit Court. The appellants urge: (1) that Mrs. Bushong failed to meet the burden of proof imposed on her as an applicant for a special exception by the zoning ordinance; (2) that the Board of Appeals had no authority to grant a use of land that would violate restrictive covenants binding the land; and (3) that regulations of the Village permitting only single family residential use of all property in the Village supersede the zoning ordinance of the Maryland-Washington Regional District in Montgomery County (the Village being in that district), and that the Board of Appeals had no authority to grant a use of land in violation of these regulations.

Mrs. Bushong purchased the property involved in 1948. Soon thereafter she remodeled it and began the operation of a care home. She obtained no permits or licenses from anyone and, when she was advised that she was violating the law, applied for a special exception, pursuant to the provisions of the applicable zoning ordinance. The granting of a special exception for a care home in property zoned residential, if stated area, frontage and setback minimums are present, is permitted by Montgomery County Code, 1955, Chap. 107, Secs. 25-28q(2). It is not questioned that Mrs. Bushong's lot met these requirements. Sec. 27 puts upon the applicant for the special exception the burden of proof, which includes the burden of going forward with the evidence and the burden of persuasion on all questions of fact which the ordinance requires the Board to determine, i. e., (1) that the proposed use does not affect adversely the general plan of the district or any master plan; (2) that the proposed use will not affect adversely the health and safety of residents or workers in the area and will not be detrimental to the use or development of adjacent properties or the general neighborhood; and (3) that the standards for each particular use for which a special exception may be granted have been met.

The Board found as a fact that the use of the premises as a care home would not constitute a nuisance for any reason,

that the use of the premises will not adversely affect the present character or future development of the community, and finally, that Mrs. Bushong, by the preponderance of the evidence produced by her, had satisfied all of the requirements of the zoning ordinance. On the appeal to the Circuit Court, Judge Prescott, "* * * after a careful examination of the entire record at least three times * * *", found nothing to show that the Board of Appeals had not acted in accordance with the law. The statute that grants an appeal to the Circuit Court from the Board of Appeals for Montgomery County, Code, 1956 Supp., Art. 25A, Sec. 5(V), provides that the court "* * * shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision * * *." We pointed out in *Robertson v. Board of Appeals*, 210 Md. 190, that where the findings of the Board are supported by substantial evidence they are conclusive and that the function of the court is only to rule on the law. The record here shows there was substantial evidence to justify the action of the Board and that apart from the questions as to the effect of the restrictive covenants and the regulations of the Village, its action was fully in accordance with law.

The appellants in their argument on their second point—that restrictive covenants may not be violated by a zoning order—say that by virtue of the provisions in each deed, all houses in the Village must be "built and used for residence purposes exclusively * * * and that no trade, business, manufacture or sales or nuisance of any kind shall be carried on or permitted," and that Montgomery County Code, 1955, Chap. 107, Sec. 4, provides that the zoning ordinance shall not be deemed to interfere with or abrogate or annul, or otherwise affect, any covenants or other agreements between parties. This part of the zoning ordinance does not say, nor should it be taken to mean, that the rest of the ordinance must not be administered and decisions made under it, solely on the basis of its own provisions. The ordinance does not override or defeat whatever private rights exist and are legally enforceable, but neither is it controlled in its workings or effects by such rights. The enforcement of restrictive cove-

nants is a matter for the exercise of the discretion of an equity court in the light of attendant circumstances. Many times the covenant relied on may not have been originally effective or for many reasons, may have ceased to be effective at the time relief is sought. 2 *Rathkopf, The Law of Zoning and Planning,* p. 387, says: "The validity of the zoning ordinance, the grant of a variance or 'exception' should be considered independently of its effect upon covenants and restrictions in deeds." This Court, in *Chayt v. Maryland Jockey Club,* 179 Md. 390, 397, 398, a zoning case, said that it could not tell whether the restrictive covenants there relied on were enforceable or not and that the lower court did not err in striking out the testimony as to the restrictions, "* * * not only because of its insufficiency to enable a determination of the issue sought to be introduced, but as well for the reason that the proceedings originated in an appeal from the Board of Zoning Appeals. It, therefore, only involved questions under the Zoning Ordinance, and it seems clear that the Baltimore City Court was without jurisdiction in that proceeding to consider appellants' claim in this respect which is of necessity based upon equitable relief, because of the covenants. Such private restrictions controlled by contract and real estate law are entirely independent of zoning and have no proper place in proceedings of this character, notwithstanding if in a proper proceeding the restrictions contended for are shown to be binding upon the properties mentioned, zoning cannot nullify them." We hold that the Board of Appeals was right in making its determination without reference to the restrictive covenants. Neither its action nor our approval of that action would have any effect on the decision in a proceeding in equity to enforce the covenant.

We turn then to appellants' third contention and the main question in the case—whether the Board of Appeals could properly grant the special exception in the face of regulations adopted by the Village which, if effective, would ban the use of Mrs. Bushong's property as a care home. Chap. 172 of the Acts of 1916 amended the law governing the Village by providing in Sec. 2 that certain tax funds could be used for maintaining and laying of streets, alleys, sidewalks, for parking,

drainage, sewerage, sanitation, and other public services, for the furnishing of police protection and the removal of ashes, garbage and refuse and, finally, for the employment of a building inspector to enforce the requirements of all deeds of conveyance for properties situated in the Village and to enforce such "building, sanitary and other regulations" as said Citizens Committee, subject to the approval of the Board of County Commissioners, prescribed. Sec. 6 of the Act of 1916 provided that the Citizens Committee, subject to the approval of the Board of County Commissioners, could adopt such regulations with respect to dumping of garbage, sanitation, "erection of buildings", tearing up of streets, speed, care of property, removal of snow and ice "or other police or health regulations", as the Committee deemed proper. Jurisdiction was given justices of the peace of Montgomery County to try the violation of any such regulations, as in the case of misdemeanors. In 1938 the Citizens Committee prepared certain regulations and presented them to the Board of County Commissioners for approval. They were approved on October 18, 1938, and have never been repealed or withdrawn by the County Commissioners or County Council of Montgomery County. The pertinent parts of those regulations are:

> Section 18(a). "It shall be unlawful for any person or persons to use or cause to be used any building or premises within the section for any business purpose or for any purpose other than a one family dwelling and the accessory buildings generally used in connection with such dwelling for residence purposes.
> "Section 19. No building shall be erected or used within the section unless the same shall be a one family dwelling built and used for residence purposes exclusively, unless such building shall be a garage or other accessory outbuilding to a dwelling house built on the same lot and before or at the same time as the said garage or said accessory building."

It is worthy of note in passing that the comprehensive zoning ordinance for portions of Montgomery County, enacted

pursuant to the Metropolitan District Act of 1927, had been in effect in the Village for at least ten years when these regulations were promulgated by the Village and approved by the County Commissioners, and that the present comprehensive zoning ordinance for the County that followed the creation of the Maryland-Washington Regional District by Chap. 714, Acts of 1939, as amended by Chap. 992, Acts of 1943; codified as Montgomery County Code, 1955, Chaps. 73 and 107, applies to and is effective in the Village.

Code, 1956 Supp., Art. 66B, Sec. 35, says that where there is no conflict, the provisions of the basic state-wide zoning enabling act are to implement those of the Maryland-Washington Regional District Act, and adds that if the provisions of any local ordinance or regulation are more restrictive than its, they shall be given effect. Relying on this provision and on an inference negatively derived from the words of the Regional District Act, codified as Montgomery County Code, 1955, Chap. 73, Sec. 18, that its provisions, if more restrictive than those of "municipal or other local regulations", shall prevail, appellants argue that the words of the regulations of the Village in terms create restrictions more severe than those of Montgomery County. We assume without deciding that appellants are right on this point but this clears but one hurdle for them and they face a sterner test—to show that the regulations of the Village are valid and effective.

In this effort appellants make no claim that the Village has obtained power to zone as a municipality by compliance with the terms of the enabling act for municipal corporations in Code, 1951, Art. 66B. They say that the power was given directly to the Village by the Legislature by the Act of 1916, wherein the Village was told it could use tax funds to enforce "such building, sanitary and other regulations" as the Citizens Committee prescribed and that the Committee, with the approval of the County Commissioners, could adopt regulations with respect to "* * * erection of buildings * * *", as well as "* * * other police or health regulations".

In effect, appellants argue that, other considerations disregarded, the phrase "police or health regulations" gives complete police power to the Village, and so, the power to pro-

hibit all but residential use of property. We assume, again without deciding, that the Village is a municipal corporation—although Code, 1956 Supp., Art. 23A, titled "Corporations—Municipal"—in Sec. 9 defines the term "municipal corporation" as not including "any special tax area or district * * * exercising specific powers within a defined area but which does not exercise general municipal functions * * *" and shall consider the authority given it by the Legislature as if it had been given to a municipal corporation.

It is held generally that a municipality has no inherent police power, and so has only as much as the Legislature has expressly delegated to it. *State v. Mott,* 61 Md. 297. This Court, in *Rushe v. Hyattsville,* 116 Md. 122, 126, adopted as the law the following statement from 1 *Dillon on Municipal Corporations,* 4th Ed., Sec. 89: "* * * a municipal corporation possesses and can exercise the following powers and no others: First. Those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable." The Court then added: "It is equally well settled that any fair and reasonable doubt as to the existence of the power attempted to be exercised must be resolved against the corporation, and in such case the power must be denied." See also *Hanlon v. Levin,* 168 Md. 674, 677.

It is the general rule, also, that a municipal corporation has no power to zone by virtue of a grant to it of general police power. 8 *McQuillin, Municipal Corporations,* 3rd Ed., Sec. 25.32 and Sec. 25.35; 1 *Yokley, Zoning Law and Practice,* 2nd Ed., Secs. 18 and 19; *Kline v. City of Harrisburg* (Pa.), 68 A. 2d 182; *City of Stuttgart v. Strait* (Ark.), 205 S. W. 2d 35; *City of Searcy v. Roberson* (Ark.), 273 S. W. 2d 26. The reason for this rule is said to be that zoning was unknown to the common law and restricts the free use of property and the economic use of land, so that the courts have felt that nothing less than specific language of the Legislature gives municipalities the power to zone. Second, it has been noted that the police power of comprehensive zoning is the power to exclude completely harmless and even desirable activities and

uses, as well as those harmful to the general public welfare, which is a basic concept far beyond that of the police power generally. This Court has indicated concurrence in the view that generalities in the charter of a municipality as to the police power do not give the right to zone. In *Benner v. Tribbitt,* 190 Md. 6, the town had charter power to provide by ordinance "for the good government and peace, health and welfare of the town and the inhabitants therein." Judge Markell, for the Court, said: "The town has no zoning powers * * *."

In 1916 zoning was not being thought of by the Legislature or by small towns or villages. The legislative grant of police power to the Village was to deal with garbage, sanitation, speeding, the tearing up of streets, and so forth. We think the words "other police or health regulations" must be deemed to have referred to matters analogous to those specified. In other words what the Village got by the general phrase was what might be called the ordinary municipal police powers, and no more.

Appellants next argue that the language of the 1916 Act, authorizing the Village to make regulations for the "erection of buildings", gave the power to zone, but here again we think that no such grant of power can be inferred. It would seem that the legislative intent in giving the power to "regulate the erection of buildings" was to authorize the kind of regulation inherent in the concept of a building code. In 1927, the first basic zoning enabling act for the State was passed by Chap. 705 of the Acts of 1927. It provided, as is almost uniform in the case of zoning acts, that municipalities by following designated procedures were empowered "to regulate and restrict" lots, size of buildings and the location and use of buildings. Chap. 448 of the Acts of 1927 created the Metropolitan District that included parts of Montgomery and Prince George's Counties and provided for zoning in the parts of those Counties in the District. Sec. 20 of that act provided that the County Commissioners of the respective Counties could "regulate and restrict" the location and use of buildings, and sec. 21 provided that they could "regulate and limit" the height of buildings. The Act of 1916 gives the Village the

power to adopt "regulations", which is no more than the power to regulate. It has often been said by this Court that the power to regulate is not the power to prohibit. *State v. Mott,* 61 Md. 297, *supra; Mount Airy v. Sappington,* 195 Md. 259, 262; *Whitman v. State,* 80 Md. 410, 417; *Town of Gaithersburg v. Dosh,* 201 Md. 291, 294. Inherent in, and absolutely essential to the right to zone comprehensively, is the power to prohibit completely the location and use of certain buildings and occupations in defined areas.

We find it significant that in the same year state-wide zoning, and zoning in Montgomery County, were authorized, the Legislature by Chap. 703 of the Acts of 1927, empowered the County Commissioners of Montgomery County to make rules and regulations for "the construction of buildings" in Montgomery County and to provide for the appointment of a building inspector. We take it that the Legislature, in giving authority to the County Commissioners to enact a building code and appoint a building inspector was doing exactly what it did in authorizing the Village to regulate the erection of buildings, and that the Act of 1916 no more authorized the Village to zone because it could regulate the erection of buildings than Chap. 703 of the Acts of 1927 authorized Montgomery County to zone. It has been held that a statute allowing a municipal corporation to regulate the building or the erection of houses does not authorize it to enact zoning ordinances or to establish setback lines. *City of Stuttgart v. Strait* (Ark.), 205 S. W. 2d 35; *City of Searcy v. Roberson* (Ark.), 273 S. W. 2d 26, both *supra.* See also *Benner v. Tribbitt,* 190 Md. 6, *supra,* where the town had the specific power to pass ordinances for "controlling the erection and location of buildings" and it was held that this was not the power to zone comprehensively or to prohibit uses as a class.

The Village had no power to prohibit completely the use of buildings for trades and businesses. Its exercise of power beyond that delegated by the Legislature could not be ratified by the County Commissioners and their approval of the regulations in 1938, to the extent that they were *ultra vires,* added nothing to their validity. *Baltimore v. Porter,* 18 Md. 284, 301. The Board of Appeals acted within its powers and in

accordance with law in passing on the application for the special exception without reference to the regulations of the Village, and the Circuit Court did not err in affirming its action in granting the special exception.

*Order affirmed, with costs.*