798 A.2d 26

**Shirley ANGELINI**

v.

**HARFORD COUNTY, Maryland.**

**No. 1497, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 7, 2002.

John J. Gessner (Eric E. McLauchlin and Gessner, Snee, Mahoney & Lutche, P.A. on the brief), Bel Air, for appellant.

Margaret A. Attanasio, Love, Fleming, Bearsch & Attanasio, LLC, Bel Air, for appellee, Harford County.

J. Carroll Holzer, on the brief, Towson, for protestants.

Argued Before DAVIS, KRAUSER, and CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

CHARLES E. MOYLAN, Jr., Judge, retired, specially assigned.

Our consideration of this appeal requires us to take a fresh look at the most rudimentary A, B, C's of the administrative process. What, before an administrative agency, is the difference between the burden of production and the burden of persuasion? To whom is allocated the burden of persuasion? What, if any, basis does an administrative tribunal require to justify its being unpersuaded?

The appellant, Shirley Angelini, appeals from the denial by the Harford County Board of Appeals, in turn affirmed by Judge Emory A. Plitt, Jr. in the Circuit Court for Harford

County, of her request that a B3 zoning boundary be extended for an additional one hundred feet. Harford County is the appellee.

The appellant, in her capacity as trustee under her late father's will, owns a parcel of land comprising 47.83 acres located at or near the intersection of Mountain Road (Rte.152) and Belair Road (Rte.1) in Harford County. The property has been in her family's ownership since the 1940's and is "split zoned" into three categories: B–3 General Business District, R–2 Urban Residential District, and AG Agricultural District.

Initially the appellant sought to extend the B–3 zone (most of which was in the parcel comprising 4.73 acres fronting on Belair Road with a narrow strip fronting on Mountain Road) into the R–2 and AG areas behind the B–3 zone. She first requested (1) a 500 foot extension based on the topography adjustment contained in § 267–10(c) of the Harford County Zoning Code (the "Code"), (2) an area variance to permit the adjusted boundary to be within 300 feet of the parcel's boundary under § 267–11 of the Code, and (3) the extension of the B–3 zone by 100 feet under § 267–10(B) of the Code. During the course of the hearing before the Zoning Examiner, the appellant withdrew the first two requests, leaving only the request that the Board extend the B–3 district by 100 feet pursuant to § 267–10(B). The denial of that request is the only issue before us.

The Zoning Hearing Examiner recommended that the request be approved by the Harford County Council sitting as the Harford County Board of Appeals. The Board heard argument, utilizing the testimony before the Examiner, and in a written opinion denied the requested extension of the B–3 zoning boundary. The circuit court, in an opinion by Judge Plitt, affirmed the action of the Board.

## Standard of Review

■ The critical issue before us is the Board's interpretation of a section of the Zoning Code. Our initial focus is on the appropriate standard of appellate review we should bring to

bear on such an interpretation. When the caselaw discusses the standard of review to be applied to a decision of an administrative agency, it generally distinguishes between 1) the agency's findings of fact, to which great deference is due under the "clearly erroneous" standard; and 2) the agency's rulings of law, as to which the courts do not hesitate to substitute their judgment for that of the agency.

The critical agency determination in this case was not a finding of fact. Neither was it a ruling of law in the more common sense, although it was more like the latter than like the former. It was, rather, the agency's interpretation of a law or regulation with respect to which the agency has a special expertise. When such an interpretation is under review, judicial deference is called for. As Judge Eldridge explained for the Court of Appeals in *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376 (1999):

"Despite some unfortunate language that has crept into a few of our opinions, *a court's task on review is not to* " ' "*substitute its judgment for the expertise of those persons who constitute the administrative agency,*" ' " *United Parcel v. People's Counsel, supra,* 336 Md. at 576–77, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. [505] at 513, 390 A.2d [1119] at 1124 [1978]. *Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency.* Thus, *an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ('The interpretation of a statute by those officials charged with administering the statute is ... entitled to weight'). Furthermore, *the expertise of the agency in its own field should be respected. Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ [ex rel. Christ] v. Department of Natural Resources,* 335 Md. 427,

445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make 'significant discretionary policy determinations'); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ('application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the' legal issues)."

(Emphasis supplied).

In *Marzullo v. Kahl,* 366 Md. 158, 783 A.2d 169 (2001), the Court of Appeals was faced with the review of precisely the type of interpretation we are reviewing in this case. Judge Cathell explained why deference is the controlling standard:

In the case *sub judice,* the facts of the case are not in dispute; however, *the Board of Appeals' interpretation and application of the BCZR is in dispute.* As stated in *Banks, even though the decision of the Board of Appeals was based on the law, its expertise should be taken into consideration and its decision should be afforded appropriate deference* in our analysis of whether it was "premised upon an erroneous conclusion of law." *Banks,* 354 Md. at 68, 729 A.2d at 380, quoting from *United Parcel Service, Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994).

366 Md. at 173, 783 A.2d 169 (emphasis supplied). See also *Baltimore Gas & Elec. Co. v. Public Service Comm'n of Maryland,* 305 Md. 145, 161–62, 501 A.2d 1307 (1986); *Haigley v. Dept. of Health,* 128 Md.App. 194, 216–17, 736 A.2d 1185 (1999). Accordingly, "the expertise of the [Harford County Board of Appeals] in its own field [will] be respected."

### The Code Provision

Section 267–10 of the Harford County Zoning Code provides in pertinent part:

*The Board,* upon application therefor, after notice to the owners of the properties affected and public hearing, *may render interpretation of the boundaries of a zoning district by:*

B.  Extension of a district: *permitting the extension of a district* if the boundary line of a district divides a parcel held in single ownership on the effective date of this Part 1, provided that such extension does not exceed one hundred (100) feet beyond the boundary line.

(Emphasis supplied).  For the Harford County Board of Appeals, that provision of the Zoning Code is daily grist for its mill.

## The Appellant's Satisfaction Of
## Her Burden of Production

The appellant steadfastly asserts that she satisfied her burden of production under § 267–10B.  We agree wholeheartedly.  She did.  The complete satisfaction of that burden was articulately summarized by the Hearing Examiner in his recommendations to the Board:

In the instant case, *the Appellant has demonstrated the criteria necessary to meet the standards required by 267– 10(B)* as recited above.  The parcel is split-zoned and such split zoning has existed in single ownership at least since the date of enactment of the Zoning Code (September 1, 1982).  There was competent and *unrebutted evidence* that these criteria existed as early as 1957.

It is, moreover, no mean accomplishment to have satisfied a burden of production.  It was enough to have activated the discretion of the Board, thereby permitting the Board, were it so inclined, to grant the extension sought by the appellant. Had the Board, in its discretion, granted the extension and had People's Counsel ultimately appealed to us from such a grant, People's Counsel would have little, if any, chance of overturning the Board's decision.  The appellant's satisfaction of her burden of production would have provided the Board with a "substantial basis" for having exercised its discretion in the appellant's favor and there would be little point in challenging it.

Conversely, had the appellant failed to satisfy her burden of production, that failure, *ipso facto*, would have precluded any

ruling in her favor, as a matter of law. Even had the Board of Appeals actually granted the extension and even had the circuit court affirmed the grant, we, on People's Counsel's hypothetical appeal, would have reversed the grant as improper because, had the burden of production not been met, the Board's discretion to make such grants would not even have been activated.

Thus, the appellant's successful shouldering of the production burden was the indispensable first step in the process. Unfortunately from the appellant's point of view, the satisfaction of that burden of production was the high watermark of her case.

### The Appellant's Failure to Satisfy
### Her Burden of Persuasion

In arguing more broadly that she thereby satisfied her "burden of proof," the appellant disingenuously blurs the critical and rudimentary distinction between a burden of production and a burden of persuasion. To satisfy the burden of production is not remotely to satisfy the burden of persuasion. To have produced enough of a case to permit the Board to extend the B–3 zoning boundary was not the end of the appellant's persuasion process, but only its beginning. Until the burden of production is a successful *fait accompli,* an effort at persuasion does not even begin.

In this case, the existing B–3 zoning boundary was the *status quo.* The appellant undertook to persuade the Board to alter that *status quo.* It was the appellant who thereby became the proponent of the proposition on the table for debate, and it was the appellant, therefore, to whom was allocated the burden of persuasion. In this case, the Board was simply not persuaded. The requested extension that would have altered the *status quo* was accordingly denied.

Perhaps disingenuously, the appellant seems to be operating on the assumption that the allocation of the burden of persuasion is turned in the opposite direction. As if we had stepped with Lewis Carroll *Through the Looking Glass,* everything in

the appellant's world is in reverse. The Board of Appeals is chided by the appellant for not having been adequately persuaded **NOT** to grant the extension. The opponents of the extension are chided by the appellant for having failed to produce "substantial evidence" to support the denial.

It is never the case that the Board must be either 1) persuaded by the appellant to act or 2) persuaded by the opponents not to act. What would happen, in so Manichean a world, if the Board were not persuaded by either side? There is only one burden of persuasion, and it points in only one direction. As a tactical matter, of course, neighbors and other interested parties will probably mount a stronger case in opposition if they actually show up and present evidence. In abstract theory, however, they are not required to do so in order to prevail. They are not required to present any evidence at all, let alone substantial evidence. They are not even required to show up in order to prevail. Even if they had a change of heart and endorsed the request for a change, it could still fall of its own weight. The tribunal that needs to be persuaded may always conclude, "We have heard what the applicant had to say and we have heard nothing to the contrary, but we are still unpersuaded."

■  Generally speaking, property owners are not entitled to zoning changes automatically just because nobody opposes them. In *Pollard's Towing, Inc. v. Berman's,* 137 Md.App. 277, 289–90, 768 A.2d 131 (2001), this Court spoke of the diametric difference between **persuasion** and **non-persuasion:**

> In this case, all that was required was that the Board be *not persuaded* that there was a need for additional towing services. To the extent its finding was weightier than that, the incremental weight was surplusage. *Far less is required to support a merely negative instance of non-persuasion than is required to support an affirmative instance of actually being persuaded of something.* In *Starke v. Starke,* 134 Md.App. 663, 761 A.2d 355 (2000), we discussed that distinction between persuasion and non-persuasion:

> [I]t is far easier to sustain as not clearly erroneous the decisional phenomenon of not being persuaded than it is to sustain the very different decisional phenomenon of being persuaded. Actually, *to be persuaded of something requires a requisite degree of certainty on the part of the fact finder* (the use of a particular burden of persuasion) *based on legally adequate evidentiary support* (the satisfaction of a particular burden of production by the proponent). There are with reasonable frequency reversible errors in those regards. *Mere non-persuasion, on the other hand, requires nothing but a state of honest doubt. It is virtually, albeit perhaps not totally, impossible to find reversible error in that regard.*

(Emphasis supplied).

■ When an administrative agency such as the County Board of Appeals takes an affirmative action, there is required the predicate of substantial evidence to support such an action. When, by contrast, the agency is not persuaded to do anything and, as a result, take no action, there is no such predicate required. An honest doubt is all it takes.

■ The real world and the mirror world are absolute opposites of each other. There is a subtle, but critical, difference between 1) being **PERSUADED NOT TO DO** something and 2) being **NOT PERSUADED TO DO** something. The difference is far from trivial. The former requires some measure of persuasion; the latter requires none. The former carries with it a burden of production; the latter does not. The former shifts the allocation of both burdens of proof from the proponent to the opponent. The appellant would hold the Board of Appeals to the former standard. We will hold the Board of Appeals only to the latter standard.

### "May" Means "May or May Not"

■ The Board of Appeals concluded that the appellant's satisfaction of her burden of production, the minimal threshold requirement for a change even to be considered, did not *ipso*

*facto* create in the appellant an automatic entitlement to such a change.

> That the sole fact that a parcel is split zoned prior to the adoption of the zoning Code in 1982 *does not constitute an entitlement* to moving the zoning district(s) by up to 100 feet.

(Emphasis supplied).

The appellant nonetheless stubbornly maintains that her satisfaction of her burden of production **compelled,** rather than merely permitted, the Board to grant her requested extension and rendered its refusal to do so "arbitrary and capricious." The verb "may," to the appellant, is not a grant of permission but a command. We cannot sign on to impressing so Prussian a coloration onto that free-spirited and unconstrained auxiliary verb "may." The appellant blinds herself to the luminescent volition beaming from both § 267–10's key verb and key gerund:

> The Board ... **MAY** render interpretations ... by ... **PERMITTING** the extension of a district....

That is not only volition, it is volition squared.

Sections 1–11A and 1–11C(4) of the Harford County Code, moreover, unambiguously provide:

> § 1–11   Definitions and rules of construction.
>
> A.   In the interpretation and construction of this Code, the following rules of construction and definitions shall be observed unless inconsistent with definitions specifically enumerated in another Article or section or inconsistent with the manifest intent of the Council or the context and usage clearly requires otherwise.
>
> C.   Rules of construction.
>
>   (4) May. *The word "may" is permissive and discretionary.*

(Emphasis supplied).

In rendering its decision, the Board expressly found that it enjoyed the discretion to act or not to act.

That § 1–11C(4) of the Code of Harford county provides that the word "may" is permissive and discretionary.

In interpreting the provisions of the County Code it deals with on a regular basis, the Board is especially entitled to the deference of reviewing courts. In upholding the interpretation made by the Board in that regard, Judge Plitt, showing the appropriate deference, ruled:

In this case, *both the context of the statute and the purpose of the statute as a whole bolster a finding of a permissive construction.* First, the context of § 267–10(B) states that the Board *"may* render interpretation of the boundaries of a zoning district by: *permitting* the extension of a district." (Emphasis added). *The use of the word "may" with the word "permitting" shows a legislative purpose to authorize rather than compel. See generally Charles County Supporting Services Employees Local Union 301,* 48 Md.App. at 344–45, 427 A.2d 1025.

Second, the purpose of the statute is to allow for interpretation of a zoning map in four (4) ways: (1) by determining the location of a road or lot layout in § 267–010(A); (2) extension of a district in § 267–10(B); (3) adjustment for topography in § 267–10(C); and (4) adjustment for map errors in § 267–10(D). Each of these four (4) options allows the Board to make minor adjustments or modifications to the zoning map to more accurately reflect real-life conditions. In fact, Mr. McClune, Manager of the Land Use Management Division of the Harford County Department of Planning and Zoning, testified that it was his understanding that § 267–10 of the Code was enacted to allow for minor adjustments or minor alterations. *See* Hearing Transcript, vol 3, pages 2–19—3–22. Therefore, *even though the Petitioner satisfied the two (2) elements required under § 267–10(B), the Board is not required to grant the request unless they feel that the minor adjustment or modification is warranted.*

(Emphasis supplied). The word "may," like the month, is a butterfly. Far be it from us to clap it in irons.

### Carrying Coals to Newcastle

██ Although legally it might have sufficed to say simply, "We are unpersuaded," few members of tribunals are content to be such minimalists. As the County Council, sitting as a Board of Appeals, seeks to put forward its best case for 1) the Harford County electorate; 2) reviewing courts, trial and appellate; and 3) the judgment of history, it may deem it expedient to "gild the lily" a bit for public consumption. Putting one's best foot forward, however, is merely a gratuitous flourish and does not shift the location of the legally significant finish line. Neither will it shift the focus of our attention.

In this case, the Board of Appeals chose to expand on several of the ways in which the appellant's case had been less persuasive than it otherwise might have been. One was its failure to state any plan or purpose for the property if the extension were granted.

9. That a review of previous cases which contained applications requesting the moving of a boundary line of a district pursuant to § 267–10(B) reveals, in each instance, that the applicant also presented a plan and/or purpose for a specific use of the property if the requested moving of the boundary line was granted.

10. That the Applicant in this case presented no evidence in support of her request beyond showing that the property was split zoned and was so zoned prior to the adoption of the Zoning Code.

The second failure in mounting a more effective argument was the omission of any reason why an extension of less than 100 feet would not have sufficed.

11. That the Applicant further, has presented no evidence or justification for a request of moving the boundary line 100 feet rather than some distance less than the maximum allowed.

Those explanations of why the case was not more effective do not in any way constitute, as the appellant now argues, an instance of the Board of Appeals's usurping the legislation

function and creating additional qualifying requirements not mentioned by the controlling statute. This was simply an informal discussion of factors which, when present, may be persuasive but which, when absent, self-evidently cannot be persuasive.

The Board of Appeals also pointed out that the same zoning change sought by the appellant had, in effect, recently been considered by the County Council as part of the comprehensive rezoning process and had been rejected.

7. That the parcel in question was subject to extensive review by the Harford County Council during the most recently concluded comprehensive rezoning process in 1997 wherein the property owner's request to rezone the parcel to B3 was denied.

That discussion does not represent, as the appellant now argues, a case of the Board's erroneously considering matters outside the record. In terms of the personal knowledge of the Board members, moreover, the Board of Appeals and the County Council were one and the same. (We are not suggesting that that identity is critical to our appraisal.)

### A Parthian Dart

If any additional factor were needed (it is not) to assist in the statutory construction of § 267–10B of the Harford County Zoning Code, the axiomatic warning to avoid an "illogical or unreasonable result" would loom large on our horizon. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986).

Both the appellees and Judge Plitt pointed out the "illogical and unreasonable" consequences that could readily follow if the appellant's mechanistic reading of the section were to prevail. Monday's automatic extension could be followed by a similarly automatic and incremental extension on Tuesday, by yet another on Wednesday, and so on until the expanding B–3 zone had bumped up against the appellant's property line or

the Pennsylvania state border. Judge Plitt described the bizarre consequences that could flow from such a construction.

> If this Court were to find that fulfillment of the two (2) statutory criteria alone required the Board to grant the Petitioner's request, not only would the legislative purpose be subverted, but *an absurd result, inconsistent with common sense, would be the outcome.* If the Board did not have the discretion to grant or deny the request, *the statute could be used as an end-run to zoning.* Essentially, any landowner who meets the two (2) statutory criteria could keep coming back for another 100 foot extension until their property was effectively rezoned as they wished, even if that rezoning ran contrary to a comprehensive rezoning.

(Emphasis supplied). The avoidance of such a result would seem to make much sense, but that observation on our part is surplusage.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**